MARTIN, PRINGLE, OLIVER,
  WALLACE & BAUER, L.L.P.
645 E. Douglas, Suite 100
Wichita, Kansas 67202
Telephone: (316) 265-9311
Facsimile: (316) 265-2955
gadrumright@martinpringle.com
mjheili@martinpringle.com

**UNITED STATES DISTRICT COURT FOR THE**
**DISTRICT OF KANSAS**

| | |
|---|---|
| LEGEND SENIOR LIVING, LLC, ) <br> ) <br> Plaintiff, ) <br> ) <br> vs. ) <br> ) <br> LEGEND HEALTHCARE, LLC, ) <br> ) <br> Defendant. ) | Case No. _____ <br><br> **JURY TRIAL DEMANDED** |

**COMPLAINT**

Plaintiff Legend Senior Living, LLC ("Plaintiff" or "LSL"), by and through its counsel Greg A. Drumright and Matthew J. Heili of Martin, Pringle, Oliver, Wallace and Bauer, L.L.P., for its Complaint against Defendant Legend Healthcare, LLC ("Defendant" or "LHC"), alleges and states as follows:

**PRELIMINARY STATEMENT**

1. This is an action for infringement of LSL's federally-registered service marks, "LEGEND" and "LEGEND SENIOR LIVING", under section 32(1) of the Lanham Act, 15 U.S.C. § 1114(1), for unfair competition and false designation of origin under Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(c), and for substantial and related claims of infringement, unfair competition, and dilution under the common laws of the State of Kansas, all arising from LHC's unauthorized use of LSL's service marks in connection with marketing, advertising,

1

promotion, offering for sale, and the sale of LHC's long-term care, skilled nursing services, assisted living services, rehabilitation services, and other healthcare services offered to senior citizens and/or mentally or physically challenged individuals, all of which are the same line of services offered by LSL.

2. LSL seeks injunctive and monetary relief.

## JURISDICTION AND VENUE

3. This Court has jurisdiction over this action pursuant to 15 U.S.C. § 1121 and 28 U.S.C. §§ 1331 and 1338(a) and (b), and pursuant to the principals of supplemental jurisdiction under 28 U.S.C. § 1367.

4. This Court has personal jurisdiction over LHC as it is a Kansas limited liability company located in this judicial district of Kansas, which provides senior citizen care services in this judicial district of Kansas.

5. Venue is proper in this district under 28 U.S.C. §1391(b)(2) as a substantial part of the events or omissions giving rise to the claim occurred in this district.

## PARTIES

6. Plaintiff LSL is a limited liability company formed under the laws of the State of Kansas with its primary place of business at 8415 E. 21st Street N., Suite #100, Wichita, Kansas 67206. Plaintiff is in the business of providing independent living, assisted living, memory care, rehabilitation services, and other nursing and healthcare services to seniors and mentally or physically challenged individuals. LSL has ten memory care, assisted living, and retirement community facilities throughout the State of Kansas, including locations in Topeka, Kansas and Lawrence, Kansas. Plaintiff also has facilities and provides its services in Colorado, Florida, Oklahoma, Pennsylvania, and Texas. LSL has a federally registered and inconstestable service

mark for its "LEGEND" design plus words mark, Registration Number 3859532. LSL also has a federally registered and incontestable service mark for its "LEGEND SENIOR LIVING" standard character mark, Registration Number 3859531. LSL uses both marks in association with its facilities and services.

7. Upon information and belief, Defendant LHC is a limited liability company formed under the laws of the State of Kansas with its primary place of business at 1010 East Street, Tonganoxie, Kansas 66086 and its registered office at 112 SW 7th Street, Suite 3C, Topeka, Kansas 66603. Upon information and belief, LHC is in the business of offering long-term care and other healthcare services to seniors at its facility in Tonganoxie, Kansas.

## FACTUAL BACKGROUND

A. **LSL and Its Service Marks**

8. LSL is engaged in the business of providing independent living, assisted living, memory care, rehabilitation services, and other nursing and healthcare services to seniors, and mentally or physically challenged individuals, at its various memory care, assisted living, and retirement community facilities across Kansas and the United States.

9. LSL has ten facilities in Kansas where it provides its services, including a facility in Lawrence, Kansas at 3220 Peterson Road, Lawrence, Kansas 66049 and a facility in Topeka, Kansas at 1931 SW Arvonia Pl, Topeka, Kansas 66615. LSL's other Kansas facilities are in Coffeyville, Kansas; Hutchinson, Kansas; Pratt, Kansas; and Wichita, Kansas.

10. LSL is the owner of valid and subsisting United States Service Mark Registration No. 3859532 on the Principal Register in the United States Patent and Trademark Office, Registration Date October 12, 2010, for its "LEGEND" design plus words mark (hereinafter "Legend Mark") for its assisted living, independent living, nursing, and personal care facilities

and services, which has become incontestable within the meaning of Section 15 of the Lanham Act, 15 U.S.C. § 1065. Attached as Exhibit 1 is a true and correct copy of the registration certificate for LSL's Legend Mark, issued by the United States Patent and Trademark Office. The Legend Mark consists of stylized wording, and the "L" is framed on the right by an oak-type leaf to which another oak-type leaf is attached.

11. LSL is also the owner of a valid and subsisting United States Service Mark Registration Number 3859531 on the Principal Register in the United States Patent and Trademark Office, Registration Date October 12, 2010, for its "LEGEND SENIOR LIVING" standard character mark (hereinafter "Legend Senior Living Mark") for its assisted living, independent living, nursing, and personal care facilities and services, which has become incontestable within the meaning of Section 15 of the Lanham Act, 15 U.S.C. § 1065. Attached as Exhibit 2 is a true and correct copy of the registration certificate for LSL's Legend Senior Living Mark, issued by the United States Patent and Trademark Office. LSL has disclaimed the exclusive right to the use of "SENIOR LIVING" apart from its use in the "LEGEND SENIOR LIVING" Mark, thereby establishing the word "LEGEND" as the distinctive portion of the "LEGEND SENIOR LIVING" Mark.

12. LSL has used the Legend Mark and the Legend Senior Living Mark (together hereinafter, the "LEGEND Marks") in commerce throughout the United States and in the State of Kansas continuously since 2009 in connection with the provision, offering for sale, sale, marketing, advertising, and promotion of its services and facilities.

13. In addition to the certificates of registration referenced in paragraphs 10 and 11, and as a result of widespread, continuous, and exclusive use of the LEGEND Marks throughout

Kansas to identify its services and facilities, LSL owns valid and subsisting Kansas common law rights to the LEGEND Marks.

14. LSL has expended substantial time, money, and resources marketing, advertising, and promoting its services and facilities provided and sold under the LEGEND Marks, including, but not limited to, through its website, legendseniorliving.com and social media platforms like Facebook and LinkedIn.

15. LSL provides its services under its LEGEND Marks to seniors, and mentally or physically challenged individuals, who desire or need independent living or assisted living situations and services, and/or personal care, memory care, rehabilitation services, and other similar care and services.

16. As a result of LSL's expenditures and efforts, the LEGEND Marks have built up significant value due to long-standing use and the high quality of LSL's services, and have acquired incalculable distinction, reputation, and goodwill belonging exclusively to LSL.

B. **LHC's Unlawful Activities**

17. LHC directly competes for customers with LSL and is engaged in similar services to LSL, by providing long-term care, skilled nursing, short-term rehab, and other healthcare services to seniors at its facility in Tonganoxie, Kansas.

18. Without LSL's authorization, and upon information and belief, beginning after LSL acquired protectable exclusive rights in its LEGEND Marks, LHC adopted and began using in commerce the identical "Legend" name as used by LSL, including in its domain name legendks.com; and a word design featuring the use of tree leaves next to the word "Legend", similar to the leaves used in LSL's Legend Mark (hereinafter, the "Infringing Marks").

5

19. The Infringing Marks adopted and used by LHC are confusingly similar to LSL's LEGEND Marks due to the use of the identical word "Legend", the similar tree leaf incorporation, and the nearly identical services provided under and associated with the Infringing Marks and the LEGEND Marks.

20. Upon information and belief, LHC prominently displays the Infringing Marks throughout its website, legendks.com; on its Facebook page; on signage at its facility; on resident transportation vehicles; in direct mail advertising materials; and in community newsletters.

21. Upon information and belief, LHC has been engaged in the provision, marketing, advertising, promotion, offering for sale, and sale of its services using the Infringing Marks in Kansas, particularly in the areas surrounding its Tonganoxie, Kansas facility, including Topeka, Kansas and Lawrence, Kansas, both of which are within approximately 50 miles or less of Tonganoxie.

22. Upon information and belief, LHC has also been engaged in the marketing, advertising, and promotion of its services using the Infringing Marks in Missouri and other surrounding states.

23. Upon information and belief, LHC provides, markets, advertises, promotes, offers to sell, and sells its services under the Infringing Marks to senior customers and their families from around the State of Kansas and other surrounding states, particularly in the areas surrounding Tonganoxie, who desire and/or need long-term care, skilled nursing, short-term rehab, and other healthcare services for seniors and/or mentally or physically challenged individuals.

24. Upon LSL's discovery of LHC's use of the Infringing Marks, LSL's counsel sent a cease-and-desist letter to LHC on August 14, 2020, objecting to LHC's use of the Infringing

Marks, in an attempt to amicably resolve the matter. In response to LSL's letter, LHC indicated in a September 2, 2020 letter that LHC did not intend to cease using the Infringing Marks.

25. LSL's counsel sent a second cease-and-desist letter to LHC on March 31, 2021, and in response to that letter and subsequent attempts to come to a fair resolution, the parties have not been able to come to a resolution. Needless to say, LHC has failed and refused to cease infringing on LSL's trademark rights.

26. LHC's infringing acts as alleged herein have caused and are likely to cause confusion, mistake, and deception among the relevant consuming public, in which LSL and LHC directly compete for customers, as to the source or origin of LHC's services and have and are likely to deceive the relevant consuming public into believing, mistakenly, that LHC's services originate from, are associated or affiliated with, or otherwise authorized by LSL when they are not. Indeed, LSL has experienced actual consumer confusion between the two entities.

27. Upon information and belief, LHC's acts are willful with the intent to trade on the goodwill of LSL's LEGEND Marks, cause confusion and deception in the marketplace, and divert potential sales of LSL's services to LHC.

28. LHC's acts are causing, and unless restrained, will continue to cause damage and immediate irreparable harm to LSL and to its valuable reputation and goodwill with the consuming public for which LSL has no adequate remedy at law.

## COUNT I
## FEDERAL TRADEMARK INFRINGEMENT

29. LSL incorporates by reference the statements and allegations of paragraphs 1 through 28 hereof, as if fully set forth herein.

30. LHC's unauthorized use in commerce of the Infringing Marks as alleged herein is likely to deceive consumers as to the origin, source, sponsorship, or affiliation of LHC's services,

and is likely to cause consumers to believe, contrary to fact, that LHC's services are provided, authorized, endorsed, sponsored, or sold by LSL, or that LHC is in some way affiliated with LSL. LHC's conduct therefore constitutes service mark infringement in violation of Section 32(1) of the Lanham Act, 15 U.S.C. § 1114(1). Indeed, LSL has experienced actual consumer confusion between the two entities.

31. Upon information and belief, LHC has committed the foregoing acts of infringement with full knowledge of LSL's prior rights in the LEGEND Marks and with the willful intent to cause confusion and trade on LSL's goodwill.

32. LHC's conduct is causing immediate and irreparable harm and injury to LSL, and to its goodwill and reputation, and will continue to both damage LSL and confuse the public unless enjoined by this Court. LSL has no adequate remedy at law.

33. LSL is entitled to, among other relief, injunctive relief and an award of actual damages, LHC's profits, enhanced damages and profits, reasonable attorneys' fees, and costs of the action under Sections 34 and 35 of the Lanham Act, 15 U.S.C. §§ 1116, 1117, together with pre-judgment and post-judgment interest.

## COUNT II
## FEDERAL UNFAIR COMPETITION AND FALSE DESIGNATION OF ORIGIN

34. LSL incorporates by reference the statements and allegations of paragraphs 1 through 33 hereof, as if fully set forth herein.

35. LHC's unauthorized use in commerce of the Infringing Marks as alleged herein is likely to deceive consumers as to the origin, source, sponsorship, or affiliation of LHC's services, and is likely to cause consumers to believe, contrary to fact, that Defendant's services are provided, authorized, endorsed, sponsored, or sold by LSL, or that LHC is in some way affiliated with LSL. Indeed, LSL has experienced actual consumer confusion between the two entities.

36. LHC's unauthorized use in commerce of the Infringing Marks as alleged herein constitutes use of a false designation of origin and misleading deception and representation of fact.

37. Upon information and belief, LHC's conduct as alleged herein is willful and is intended to and is likely to cause confusion, mistake, or deception as to the affiliation, connection, or association of LHC with LSL.

38. LHC's conduct as alleged herein constitutes unfair competition in violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a).

39. LHC's conduct as alleged herein is causing immediate and irreparable harm and injury to LSL, and to its goodwill and reputation, and will continue to both damage LSL and confuse the public unless enjoined by this Court. LSL has no adequate remedy at law.

40. LSL is entitled to, among other relief, injunctive relief and an award of actual damages, LHC's profits, enhanced damages and profits, reasonable attorney's fees, and costs of the action under Sections 34 and 35 of the Lanham Act, 15 U.S.C. §§ 1116, 1117, together with pre-judgment and post-judgment interest.

### COUNT III
### KANSAS COMMON LAW TRADEMARK INFRINGMENT AND UNFAIR COMPETITION

41. LSL incorporates by reference the statements and allegations of paragraphs 1 through 40 hereof, as if fully set forth herein.

42. As a result of widespread, continuous, and exclusive use of the LEGEND Marks throughout Kansas to identify its services and facilities, LSL owns valid and subsisting Kansas common law rights to the LEGEND Marks.

43. LHC's unauthorized use in commerce of the Infringing Marks as alleged herein is likely to deceive consumers as to the origin, source, sponsorship, or affiliation of LHC's services, and is likely to cause consumers to believe, contrary to fact, that LHC's services are provided, authorized, endorsed, sponsored, or sold by LSL, or that LHC is in some way affiliated with LSL when it is not.  Indeed, LSL has experienced actual consumer confusion between the two entities.

44. LHC's unauthorized use of the Infringing Marks constitutes trademark infringement and unfair competition under the common law of Kansas.

45. Upon information and belief, LHC's conduct as alleged herein is willful and is intended to and is likely to cause confusion, mistake, or deception as to the affiliation, connection, or association of LHC with LSL.

46. LHC has used and continues to use the Infringing Marks with full knowledge of LSL's registration, use and ownership of the LEGEND Marks and without regard to the existence, and continuing likelihood, of consumer confusion created by such unauthorized use.

47. LHC's conduct as alleged herein is causing immediate and irreparable harm and injury to LSL, and to its goodwill and reputation, and will continue to both damage LSL and confuse the public unless enjoined by this Court. LSL has no adequate remedy at law.

48. LSL has been damaged and will continue to be damaged by LHC's acts in an amount that is not yet determined or ascertainable. LSL is entitled to, at a minimum, injunctive relief, an accounting of LHC's profits, actual damages, punitive damages, attorney's fees, the costs of the action, and all other relief authorized by law.

## COUNT IV
## KANSAS COMMON LAW DILUTION

49. LSL incorporates by reference the statements and allegations of paragraphs 1 through 48 hereof, as if fully set forth herein.

50. As a result of widespread, continuous, and exclusive use of the LEGEND Marks throughout Kansas to identify its services and facilities, LSL owns valid and subsisting common law rights to the LEGEND Marks.

51. There is no statutory impediment to the recognition of a common law dilution right as the Kansas trademark statutes, pursuant to K.S.A. § 81-217, do not "adversely affect the rights or the enforcement of rights in marks acquired in good faith at any time in common law."

52. LSL's LEGEND Marks are famous in Kansas and subject to protection from dilution, as a result of the extensive use of the LEGEND Marks in association with LSL's services throughout the State of Kansas in marketing, advertising, promotion, and provision of LSL's services continuously since 2009, as alleged previously herein.

53. LSL's LEGEND Marks were made further famous and distinctive by the federal registration of the LEGEND Marks as described previously herein.

54. LHC's unauthorized use of the Infringing Marks began after the LEGEND Marks had become famous, and such unauthorized use of the Infringing Marks by LHC has caused and continues to cause dilution of the distinctive quality of the LEGEND Marks.

55. Upon information and belief, LHC's conduct as alleged herein is willful and is intended to trade on LSL's reputation or cause dilution of LSL's LEGEND Marks.

56. LHC's conduct as alleged herein is causing immediate and irreparable harm and injury to LSL, and to its goodwill and reputation, and will continue to cause damage to LSL and dilute the LEGEND Marks unless enjoined by this Court. LSL has no adequate remedy at law.

57. LSL has been damaged and will continue to be damaged by LHC's acts in an amount that is not yet determined or ascertainable. LSL is entitled to, at a minimum, injunctive

relief, an accounting of LHC's profits, actual damages, punitive damages, attorney's fees, the costs of the action, and all other relief authorized by law.

## PRAYER FOR RELIEF

WHEREFORE, Legend Senior Living, LLC prays for judgment in its favor on all counts against Defendant Legend Healthcare, LLC, and prays that this Court:

(a) Adjudge that LHC has infringed upon LSL's service marks and engaged in unfair competition and false designation of origin in violation of 15 U.S.C. § 1114 and 15 U.S.C. § 1125(a);

(b) Adjudge that LHC has infringed upon LSL's service marks, engaged in unfair competition, and caused dilution to LSL's service marks in violation of Kansas common law;

(c) Grant an injunction, during the pendency of this action and then thereafter permanently, enjoining LHC, its employees, agents, officers, directors, attorneys, successors, affiliates, subsidiaries, and assigns, and all of those in active concert and participation with any of the foregoing persons and entities who receive actual notice of the Court's order by personal service or otherwise from:

   i. Providing services, selling, marketing, advertising, promoting, or authorizing any third party to provide services, sell, market, advertise, or promote LHC's services and/or facilities bearing, using, or in any way affiliated with the Infringing Marks or any other mark that is counterfeit, copy, simulation, confusingly similar variation, or colorable imitation of LSL's LEGEND Marks;

   ii. Engaging in any activity that infringes LSL's rights in its LEGEND Marks;

    iii. Engaging in any activity constituting unfair competition with LSL;

    iv. Engaging in any activity that is likely to dilute the distinctiveness of LSL's LEGEND Marks;

    v. Making or displaying any statement, representation, or depiction that is likely to lead the public or the trade to believe that LHC's services are in any manner approved, endorsed, licensed, sponsored, authorized, or franchised by or associated, affiliated, or otherwise connected with LSL or that LSL's services are in any manner approved, endorsed, licensed, sponsored, authorized, or franchised by or associated, affiliated, or otherwise connected with LHC;

    vi. Using or authorizing any third party to use any false description, false representation, or false designation of origin, or any marks, names, words, symbols, devices, or trade dress that falsely associate such business, goods and/or services with LSL or tend to do so;

    vii. Registering or applying to register any trademark, service mark, domain name, trade name, or other source identifier or symbol of origin consisting of or incorporating the Infringing Marks or any other mark that infringes or is likely to be confused with LSL's LEGEND Marks, or any services or facilities of LSL; and

    viii. aiding, assisting, or abetting any other individual or entity in doing any act prohibited by sub-paragraphs (i) through (vii);

(d) Order LHC to file with the Court and serve upon LSL's counsel within thirty (30) days after service on LHC of any injunction which may be entered in this action, or such extended period as the Court may direct, a report in writing under oath, setting forth in

   detail the manner and form in which LHC has complied therewith, pursuant to 15 U.S.C. § 1116(a);

(e) Order LHC to deliver up for destruction all advertisements and materials that are in LHC's possession or under its control bearing the Infringing Marks, or any simulation, reproduction, counterfeit, copy, or colorable imitation thereof, pursuant to 15 U.S.C. § 1118;

(f) Order LHC to immediately transfer to LSL, without consideration, the domain name, legendks.com, that is confusingly similar to LSL's LEGEND Marks;

(g) Award LSL an amount up to three times the amount of its actual damages, pursuant to 15 U.S.C. § 1117(a), which are believed to be in excess of $75,000;

(h) Grant to LSL an accounting and award of all LHC's profits realized by its wrongful acts, pursuant to 15 U.S.C. § 1117(a), enhanced as appropriate to compensate LSL for the damages caused thereby;

(i) Declare that this is an exceptional case, and award LSL its costs and reasonable attorney's fees, pursuant to 15 U.S.C. § 1117(a);

(j) Award LSL punitive damages as the Court finds appropriate;

(k) Award LSL interest, including pre-judgment and post-judgment interest on the foregoing sums; and

(l) Award such other and further relief as the Court deems just and proper.

## **DEMAND FOR TRIAL BY JURY**

  Legend Senior Living, LLC hereby demands a trial by jury and the designation of trial to be in Wichita, Kansas.

Respectfully submitted,

MARTIN, PRINGLE, OLIVER,
 WALLACE & BAUER, L.L.P.

 */s/ Greg A. Drumright*
Greg A. Drumright, KS #20743
Matthew J. Heili, KS #28857
*Attorneys for Plaintiff*
*Legend Senior Living, LLC*

4866-3455-4884